GARDEN STATE FARMS, INC., PLAINTIFF-APPELLANT, AND STATE OF NEW JERSEY, DEPARTMENT OF TRANSPORTATION, DIVISION OF AERONAUTICS, PLAINTIFF-RESPONDENT, v. MAYOR LOUIS BAY II, COMMISSIONER HAROLD FLOYD AND COMMISSIONER ARTHUR A. BROKAW OF THE BOROUGH OF HAW-THORNE, JULES BOUBLIS, JOSEPH ROONEY, JOHN SOTNECK, PAUL ELWOOD, JOSEPH PSOTA AND THE BOROUGH OF HAWTHORNE, A MUNICIPALITY OF THE STATE OF NEW JERSEY, DEFENDANTS-RE-SPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued December 7, 1976—Decided January 5, 1977.

440

Before Judges HALPERN, BOTTER and KOLOVSKY.

*Mr. Herman M. Jeffer* argued the cause for plaintiff-appellant, Garden State Farms, Inc. (*Messrs. Jeffer, Walter, Tierney, De Korte, Hopkinson & Vogel,* attorneys).

*Mr. Jeffrey M. Hall,* Deputy Attorney General, argued the cause for plaintiff-respondent, State of New Jersey, Department of Transportation, Division of Aeronautics (*Mr. William F. Hyland,* Attorney General, attorney, *Mrs. Erminie Conley,* Deputy Attorney General, of counsel).

*Mr. Robert J. Passero* argued the cause for defendants-respondents (*Messrs. Raff & Passero,* attorneys).

The opinion of the court was delivered by

KOLOVSKY, J. A. D. Plaintiff Garden State Farms, Inc. (Garden State), which desires to maintain a helistop on its vacant land in Hawthorne, appeals from a judgment dismis-

sing its complaint. The complaint had sought an adjudication that an amendment to the Hawthorne zoning ordinance which prohibited the use of any land and buildings in the municipality "for the purpose of accommodating the taking off or the landing of airplanes, helicopters or any and all other types of airborne vehicles" is "invalid and void." The trial judge ruled to the contrary, rejecting Garden State's contentions that (1) "federal and state regulation have occupied the field in regulating aviation to the exclusion of local enactments," and (2) "the [amendatory] ordinance violated the enabling statutes from which the municipality derives its local zoning authority." 136 *N. J. Super.* at 11.

Garden State, on its appeal, repeats the arguments it had unsuccessfully urged to the trial court. One of those arguments, phrased as follows:

\* \* \* The State Aviation Act pre-empts the Borough of Hawthorne's authority to zone against aeronautical ground-based facilities as the Act by its terms precludes municipal legislation on the subject of aviation, a field of endeavor which requires uniform State-wide regulation and development,

is also advanced in the brief filed by the Attorney General on behalf of the Division of Aeronautics in the State Department of Transportation, which had been joined as a nominal party plaintiff by order of the trial judge.

The appellate argument, thus phrased as assertions that the zoning ordinance is "void" and that "municipal legislation on the subject of aviation" is "precluded" by the State Aviation Act, beclouds the relief which Garden State actually seeks. That relief, as disclosed by the record detailed in the trial judge's opinion, is a determination that the zoning ordinance amendment is not a bar to Garden State's obtaining a license from the Commissioner of Transportation (Commissioner) permitting it to maintain a helistop on its Hawthorne property.[1]

---

[1] On October 29, 1973 a license to use the premises as a helistop had been issued to Garden State by the Division but was suspended

 We are satisfied that Garden State is entitled to such a determination even though we disagree with the contentions that the zoning ordinance is void and that its adoption is precluded by relevant federal and state enactments and regulations. Under our cases the zoning power granted to municipalities includes the power to adopt an ordinance limiting or prohibiting the use of land for aeronautical facilities, see *Yeomans v. Hillsborough Tp.*, 135 *N. J. L.* 599 (Sup. Ct. 1947), and *Ridgewood Air Club v. Ridgewood Bd. of Adj.*, 136 *N. J. L.* 222 (Sup. Ct. 1947), albeit that, as hereinafter shown, such limitation or prohibition will be deemed ineffective in circumstances in which it conflicts with supervening state enactments or regulations.

 We agree with the trial judge, substantially for the reasons given by him, that there is no substance to Garden State's argument that "The United States Congress has enacted legislation preempting the field of aircraft travel and the ordinance enacted is violative of the supremacy clause."

 Further, the State Aviation Act, *N. J. S. A.* 6:1–20 *et seq.*, does not by its terms preclude the adoption of such a zoning ordinance. Indeed, as hereinafter noted, the Commissioner, in regulations adopted by him pursuant to the power to adopt rules and regulations granted to him by the act, has chosen to give controlling effect to such municipal zoning ordinances in the case of two of the five classes of aeronautical facilities for which licenses are issued.

 However, the fact that a municipality has the *power* to adopt zoning ordinances limiting or prohibiting the use of property as an aeronautical facility is not dispositive. An ordinance adopted pursuant to such zoning power is ineffective when, in the particular circumstances, it conflicts

on December 6, 1973 "because of irregularities in the administrative proceedings [leading to] the grant of the license. At present the license remains suspended, with further action on it dependent at least in part upon the outcome of this lawsuit." 136 *N. J. Super.* at 6.

with the powers granted by other legislation to the State, to one of its agencies or to some other governmental unit.

Local legislation, including zoning ordinances, cannot prohibit what a state statute or regulation allows. *Chester Tp. v. Panicucci,* 62 *N. J.* 94, 99 (1973); *Aviation Services v. Hanover Tp. Bd. of Adj.,* 20 *N. J.* 275 (1956); *Hill v. Collingswood,* 9 *N. J.* 369, 375 (1952). "A municipality may not contradict a policy the Legislature establishes." *Summer v. Teaneck,* 53 *N. J.* 548, 554 (1969); 1 Anderson, *American Law of Zoning* (2 ed. 1976), § 5.25, at 346–349.

If the Commissioner of Transportation should determine, after holding the required public hearing (see *Penna. R. R. Co. v. N. J. State Aviation Comm'n,* 2 *N. J.* 64 (1949); *Trenton Aviation, Inc. v. Gerard,* 113 *N. J. Super.* 253 (App. Div. 1971), certif. den. 58 *N. J.* 331 (1973)) that an appropriate showing has been made to warrant the grant of a license permitting the use of Garden State's property as a heliport or helistop,[2] the existence of the Hawthorne zoning ordinance cannot operate as a bar to the grant of that license or to that use.

We so rule because we are satisfied that the Legislature, by the enactment of the State Aviation Act, *N. J. S. A.* 6:1–20 *et seq.* (originally enacted as *L.* 1938, *c.* 48) intended to give and has given the Commissioner of Transportation, acting through the Division of Aeronautics,[3] the ultimate power and responsibility of determining where aeronautical facilities may be located, *cf. Oechsle v. Ruhl,*

---

[2] A "heliport" is an area designated for the landing and take-off of helicopters and used solely for that purpose. A "helistop" is not limited solely to use for that purpose. *N. J. A. C.* 16:54–4.1.

[3] The functions, powers and duties of the existing State Department of Aviation, the State Aviation Commission and the State Director of Aviation under the 1938 Act were transferred to the Department of Conservation and Economic Development by *N. J. S. A.* 13:1B–6, a section of *L.* 1948, *c.* 448. All those functions, powers and duties were, in turn, transferred to the Department of Transportation by *N. J. S. A.* 27:1A–3, enacted as part of *L.* 1966, *c.* 301.

140 *N. J. Eq.* 355 (Ch. 1947), free from municipal control except to the extent that the Commissioner, by regulation, deems it appropriate to give controlling weight to local zoning provisions.

That such was the legislative intent is evident not only from *N. J. S. A.* 6:1–20, setting forth the desirability and need for state-wide regulation of aeronautics, but also, and more particularly, from the provisions in *N. J. S. A.* 6:1–29, that "except as otherwise specifically provided by law," the State agency

\* \* \* shall have supervision over aeronautics within this State, including, but not by way of limitation, the avigation, flight and operation of aircraft, the establishment, *location*, maintenance, operation, size, design, repair, management and use of *airports, landing fields, landing strips, heliports and helistops*, sport parachuting centers, air markings and other avigational facilities, and the establishment, operation, management and equipment of fixed base operators. The commissioner may adopt and promulgate reasonable rules, regulations and orders regulating air traffic and establishing *minimum standards for* aircraft, pilots, fixed base operators, *airports, landing fields, landing strips, heliports and helistops*, sport parachuting centers, air markings and all avigational facilities within the State and establishing minimum altitudes of flight commensurate with the needs of public safety, the safety of persons operating or using aircraft and the safety of persons and property on the ground, and to develop and promote aeronautics within this State. The commissioner shall have power to promulgate and adopt any reasonable rules and regulations that may be necessary to effectuate the purposes of this act in the interest of public safety and the development of aeronautics in this state. [Emphasis supplied]

(See also, *N. J. S. A.* 6:1–21(n), defining "temporary landing area for rotary wing aircraft," and *N. J. S. A.* 6:1–44, providing for the licensing of aeronautical facilities.)

The Commissioner, pursuant to the power thus granted by the above-quoted section, has adopted regulations pursuant to which he determines whether a projected aeronautical facility should be permitted at a particular location. Separate regulations govern each of the five classes of facilities referred to in the regulations, viz.: (1) *public use* airports, landing fields and landing strips, *N. J. A. C.* 16:54–1 *et seq.;* (2)

private (nonpublic) landing strips on which airplanes may land, *N. J. A. C.* 16:54–2, *et seq.;* (3) special landing strips for agricultural flying, *N. J. A. C.* 16:54–3 *et seq.;* (4) heliports and helistops, *N. J. A. C.* 16:54–4 *et seq.,* and (5) an official helicopter landing area for use by helicopters operated by governmental agencies, *N. J. A. C.* 16:54–5 *et seq.*

With respect to the first two classes listed, which would normally involve significantly large areas of land, the applicable regulation gives controlling effect to local zoning regulations. So, *N. J. A. C.* 16:54–1.5 provides that one seeking to use property as a *public use* airport, landing field or landing strip must file an application for a "certificate of site approval" accompanied by, among other things:

A certificate from the appropriate municipal and/or county authority that the proposed facility or alteration is not contrary to the provisions of existing local Zoning Codes and/or applicable Ordinances.

A similar requirement appears in the regulation dealing with applications for licenses permitting property to be used as a "private aviation facility landing strip-non public use." See *N. J. A. C.* 16:54–2.6.

No such provision appears in the regulations applicable to the other three classes of facilities, including heliports and helistops. It is not even suggested, and it could not be successfully maintained, that the difference between the regulations applicable to the first two classes of facilities and those applicable to the last three classes is arbitrary or unreasonable.

Were there any doubt that the legislative intent was as we have described it, or any doubt as to the validity of the regulation which permits the Commissioner to authorize the use of a particular location as a heliport or helistop despite a local ordinance prohibiting such use, that doubt is dispelled by the legislative history of the unsuccessful attempt made in 1972–1973 to make local zoning regulations controlling.

Assembly Bill 456 of 1972, as passed by both the Assembly and the Senate, proposed to add the following provision to the licensing section of the act, *N. J. S. A.* 6:1–44:

Any rules or regulations promulgated hereunder by the commissioner shall require the applicant for any license to submit a certificate from the appropriate municipal or county authority that the proposed facility is not contrary to provisions of existing zoning ordinances or other local laws.

However, the bill did not become law. Governor Cahill vetoed it (Veto Messages of Governor Cahill, 1972–1973, p. 133). The veto was not overridden.

■ The Governor's action in vetoing the bill constitutes a part of the legislative process. It and the Legislature's failure to override the veto are significant indicia supporting our interpretation of the existing law and the continuing viability of the Commissioner's regulation. See 2A Sutherland, *Statutory Construction* (rev. 3 ed. 1973), § 48.05, at 201; *Dept. of Health v. Sol Schnoll Poultry Co.*, 102 *N. J. Super.* 172, 176–177 (App. Div. 1968); *cf. Caputo v. Best Foods*, 17 *N. J.* 259, 267 (1955).

The judgment dismissing the complaint is reversed and the cause remanded for entry of a judgment declaring that the Hawthorne zoning ordinance is not a bar to the issuance to Garden State of a helispot or heliport license for its property if the Commissioner determines, after an appropriate hearing and based on adequate findings, that such a license should issue.